
**FILED**

**MARCH 6, 2008**

KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JANIE ROCHA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:04-CV-0324 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant.[1] | § | |

### REPORT AND RECOMMENDATION
### TO REVERSE THE COMMISSIONER'S DECISION
### AND REMAND FOR FURTHER ADMINISTRATIVE ACTION

Plaintiff JANIE ROCHA, brings this cause of action pursuant to 42 U.S.C.

§ 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner

of Social Security (Commissioner), denying plaintiff's application for supplemental security

income (SSI) benefits. Both parties have filed briefs in this cause. For the reasons hereinafter

expressed, the undersigned United States Magistrate Judge recommends the Commissioner's

decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case

REMANDED for proceedings consistent with this opinion.

## I.
## PROCEDURAL HISTORY

On January 2, 2002, plaintiff applied for supplemental security income (SSI) benefits

under Title XVI of the Social Security Act, claiming an onset date of January 1, 2000.

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted as the defendant in this suit.

(Transcript [hereinafter Tr.] 86-89).  Plaintiff's application for SSI benefits was denied both

initially and upon reconsideration.  (Tr. 74).  On October 23, 2002, plaintiff requested a hearing

with an Administrative Law Judge (ALJ).  (Tr. 77).  The hearing was held on August 1, 2003,

and the ALJ issued his decision finding plaintiff "not disabled" on October 22, 2003.  (Tr. 15).

The ALJ's decision became final upon the Appeals Counsel's denial of plaintiff's request for

review on October 22, 2004.  (Tr. 6).

## II.
## FACTUAL BACKGROUND

Plaintiff initially filed for SSI benefits on October 4, 2000.  (Tr. 81).  Although that

application was denied, the Texas Division of Disability Determination Services (DDS)

developed a record regarding the 2000 application, which was then included in the evaluation of

the January 2, 2002 application at issue in this case.  While evaluating plaintiff's 2000

application, DDS used consulting examiners to conduct both physical and psychiatric

examinations of plaintiff.  After conducting a physical exam on January 24, 2001,[2] Dr. Dennis

Plummer found plaintiff was able to sit for one to two hours at a time; to stand for five to thirty

minutes; to walk short distances; and to lift weights of five to fifteen pounds.[3]  (Tr. 235).

Dr. Vinson Mizell, who conducted a psychiatric evaluation of plaintiff on July 16, 2001,

diagnosed plaintiff with major depressive disorder and dependent personality disorder, and

assigned her a global assessment of functioning (GAF) score of 25.  (Tr. 297).  In Axis IV of his

---

[2]During the exam, plaintiff was able to walk on her heels and on her toes; was able to raise and lower her legs while seated and while standing; was able to walk with small steps; had tenderness in eighteen of eighteen fibromyalgia trigger points; and complained of pain when her extremities were moved through any range of motion.  (Tr. 234).

[3]Essentially, Dr. Plummer's findings equal a residual functional capacity (RFC) finding of, at most, "sedentary," as outlined by 20 C.F.R. § 416.967(a).  Because Dr. Plummer also stated that plaintiff could benefit from "ongoing low grade activity with frequent changes in position without prolonged exertion," (Tr. 235), his assessment is arguably even less than sedentary, *i.e.*, limited sedentary with a sit/stand option.

diagnosis, which relates to social and environmental problems, Dr. Mizell noted plaintiff had moderate issues.[4] (*Id.*)

Nonexamining state consultants also evaluated plaintiff's physical and mental RFC. On March 14, 2001, DDS examiners assigned plaintiff an RFC of "medium," finding plaintiff could occasionally lift and/or carry up to fifty pounds; frequently lift and/or carry up to twenty-five pounds; stand and/or sit for up to six hours of an eight hour work day; and push or pull without limit. (Tr. 300). DDS based its finding on the "objective medical evidence."[5] (Tr. 305). While reconsidering plaintiff's application, DDS consultants completed a Psychiatric Review Technique Form (PRTF) on plaintiff. (Tr. 307-320). On the PRTF, dated August 1, 2001, DDS found plaintiff had the following mental RFC: *mild* restriction of daily living activities; *moderate* difficulties in maintaining social functioning; *moderate* difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (Tr. 317). On March 14, 2001, DDS denied plaintiff's application . (Tr. 50). On August 8, 2001, DDS denied the application upon reconsideration. (Tr. 51).

Plaintiff filed a new application for SSI benefits on January 2, 2002, alleging she suffered from polymyalgia, headaches, numbness and swelling of her face and hands, and depression. (Tr. 139). In the course of evaluating this application, a second psychiatric evaluation was conducted by Dr. Mizell on May 15, 2002.[6] (Tr. 399). As before, Dr. Mizell diagnosed plaintiff

---

[4] In his objective findings, Dr. Mizell noted plaintiff was alert and oriented; was not suffering from delusions or hallucinations; suffered moderate to severe depressive ideation and passive suicidal ideation; had mildly impaired attention and concentration; had mild to moderate memory impairment; and had mildly impaired abstract thought. (Tr. 296.)

[5] Although plaintiff's treating physicians never assessed plaintiff's RFC, her medical records indicate plaintiff was seen by Dr. Ricardo Carrizo over several years for pain and discomfort related to fibromyalgia

[6] During the exam, plaintiff was well-groomed, did not suffer from delusions or hallucinations, exhibited "good" attention and concentration, had no significant memory impairment, and was able to engage in abstract thought. (Tr. 400).

3

with major depressive disorder and dependent personality disorder, and he assessed her impairments regarding social and environmental factors as moderate.  (Tr. 401).  However, unlike the previous exam, he assigned plaintiff a GAF of 35.  (*Id.*).

As with plaintiff's prior application, nonexamining consultants also assessed plaintiff's physical and mental RFC.  On June 4, 2002, DDS consultants once again assessed plaintiff's physical RFC as medium.  (Tr. 160).  On the same day, DDS completed a new PRTF, assessing plaintiff as having a *mild* restriction of activities of daily living; *moderate* difficulties in maintaining social functioning; *no* difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 417).  In light of the DDS assessments, plaintiff was denied SSI benefits.  (Tr. 52).

### III.
### PROCEEDINGS

At the hearing, plaintiff testified that she was unable to engage in many activities because of pain from her alleged impairments.  (Tr. 37).  One of plaintiff's daughters also testified, claiming she and her sisters helped plaintiff extensively with her daily activities due to plaintiff's disability.[7]  (Tr. 45-46).  There was no other testimony at the hearing.

Although in her application plaintiff claimed her impairments included polymyalgia, headaches, numbness and swelling of her face and hands, and depression, (Tr. 139), the ALJ determined  plaintiff's impairments to be degenerative cervical disc disease, fibromyalgia,[8] and situational depression.  (Tr. 19).  The ALJ determined these impairments were "severe" within

---

[7]The ALJ did not acknowledge the daughter's testimony in his decision and did not fully credit plaintiff's claims as to her functional limits made during her testimony because of contradictory statements located in the record.  (Tr. 23).

[8]At some point after plaintiff's application for SSI, the claim shifted from polymyalgia to fibromyalgia, presumably to conform with the medical diagnosis given plaintiff.  (Tr. 234-235).

the meaning of 20 C.F.R. § 416.920(c) and Social Security Ruling 96-3p, but not severe enough to equal one of the impairments listed in Part 404, Subpart P, Appendix 1of the regulations. (*Id.*).

Throughout the administrative process, plaintiff, who was 54 years old at the time of the hearing, was a person "closely approaching advanced age" with a limited education, having completed school only through the eighth grade. (Tr. 24). The ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 24, Finding No. 1). Furthermore, the ALJ found plaintiff had no acquired skills or vocationally relevant past work experience.[9] (Tr. 18, 24). Based upon plaintiff's medical record as a whole, the ALJ determined that plaintiff retained an RFC to perform substantially all of a full range of light work.[10] (Tr. 25, Finding No. 10). The ALJ further found that plaintiff retained the ability to perform simple, unskilled work (Tr. 24) and that plaintiff's ability to perform light work was not significantly compromised by any nonexertional limitation.[11] (Tr. 25, Finding No. 12). Utilizing the Medical-Vocational Guidelines (also known as the "grids"), located in Part 404, Subpart P, Appendix 2 of the Regulations, the ALJ found that a ruling of "not disabled" was directed, given plaintiff's age, education, and RFC. (Tr. 24).

---

[9] The record indicates plaintiff's only prior employment was working as a part-time housekeeper for a short time during the early 1990's. (Tr. 23, 105-106).

[10] The ALJ did not fully credit Dr. Plummer's RFC determination because it was "generally not consistent with the record as a whole, including Dr. Plummer's objective findings." (Tr. 22). Neither did the ALJ adopt the RFC assessed by DDS. Instead, the ALJ decided that light work was "a more accurate assessment of the claimant's abilities." (Tr. 22).

[11] In assessing the evidence related to plaintiff's mental RFC, the ALJ credited DDS' PRTF dated June 4, 2002. (Tr. 20). The ALJ did not credit Dr. Mizell's GAF ratings because those ratings were "grossly disproportionate to the objective clinical findings and inconsistent with claimant's lack of mental health treatment and her daily activities." (Tr. 23). Ultimately, the ALJ found plaintiff's mental RFC to be *mild* restriction of daily activities; *moderate* difficulties in maintaining social functioning; *mild* difficulties in maintaining concentration, persistence, and pace; and no periods of decompensation. (Tr. 21). The ALJ failed, however, to reconcile the finding that plaintiff suffered from "severe" depression with his finding that plaintiff had no significant nonexertional limitations.

# IV.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

V.
<u>ISSUES</u>

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff argues the following errors occurred:

1.      There is no substantial evidence to support the ALJ's finding as to plaintiff's physical and mental RFC; and

2.      The ALJ's RFC finding results from prejudicial legal error.

VI.
<u>MERITS</u>

In her brief, plaintiff asserts that the ALJ's physical and mental RFC findings are without the support of substantial evidence and result from legal error. At the administrative law judge hearing level, the ALJ bears the responsibility for determining a claimant's RFC. 20 CFR § 416.946(c). The ALJ's finding must be based on all of the relevant evidence available. 20 CFR § 416.945(a)(3). When opinions from treating, examining, or nonexamining medical sources are provided, the ALJ must give each the appropriate weight. For instance, the opinion of a treating source as to a claimant's RFC is afforded more weight than an examining source's opinion, which in turn is afforded more weight than a nonexamining source's opinion. 20 CFR § 416.927(d). The weight given a nonexamining source's opinion also depends upon the supporting explanations given by the source because there is no treatment or examining

relationship between the source and the claimant. 20 CFR § 416.927(d)(3). Furthermore, in assessing a claimant's RFC, the ALJ must consider the total limiting effect of all of a claimant's severe impairments. 20 CFR § 416.946(e).

The ALJ's RFC determination in this case is somewhat of a balancing act, walking a fine line between opinions on both sides of his determination, neither of which fully support his determination. On the one hand, the ALJ's determination contradicts the findings of the examining physician because the ALJ assigned plaintiff a higher level of functioning than the one assigned by that source. In explanation of this contradiction, the ALJ merely stated Dr. Plummer's assessment was inconsistent with the objective medical evidence in the record. However, Dr. Plummer's assessment that plaintiff retained the ability to engage in sedentary or limited sedentary work is not inconsistent with his findings as alleged by the ALJ, nor is it inconsistent with plaintiff's treatment records, which show extended treatment for pain and discomfort related to her fibromyalgia. Dr. Plummer found that plaintiff responded with pain to eighteen out of eighteen fibromyalgia trigger points and experienced pain when her extremities were moved through any range of motion. Additionally, Dr. Plummer noted that plaintiff walked and stood up slowly. The ALJ stated that the objective findings do not support an RFC limited to sedentary work, yet he fails to state what objective findings *could* exist to support Dr. Plummer's assessment. Pain, one of the primary complaints of fibromyalgia sufferers, is subjective; it cannot be measured by an objective test, such as an x-ray or CT scan. The best any doctor can do is conduct tests to assess a patient's reaction to different stimuli or movement and observe how the patient reacts; that is exactly what Dr. Plummer did.

On the other hand, the ALJ's finding of an RFC for light, simple work is arguably supported by the nonexamining source's finding of an RFC for medium work. Medium work

includes all of the demands of light work, with some additional exertional requirements. 20 CFR § 416.967(c). However, a finding by the DDS consultants that plaintiff maintained the ability to perform medium work is not, by itself, substantial evidence to support a claimant's ability to perform light work. *See Carter v. Apfel*, 220 F. Supp. 2d 393, 398-399 (M.D. Pa. 2000). First, the ALJ did not adopt this finding. Further, the lack of explanation given by the DDS consultants for the determination lessens the weight the ALJ could assign the opinion.[12] Thus, the ALJ's RFC finding is not supported by the DDS determination.

Furthermore, the ALJ's findings as to plaintiff's mental RFC do not match any source's findings. Dr. Mizell found plaintiff had major depressive disorder, moderate social and environmental issues, and a GAF of 25 and 35, respectively. In the first PRTF, a DDS consultant determined that plaintiff had a *mild* restriction of daily living activities; *moderate* difficulties in maintaining social functioning; and *moderate* difficulties in maintaining pace, persistence, and concentration. In the second PRTF, a DDS consultant determined that plaintiff had a *mild* restriction of daily living activities; *moderate* difficulties in maintaining social functioning; and *no* difficulties in maintaining pace, persistence, and concentration. The ALJ found plaintiff had a mild restriction of daily living activities; moderate difficulties in maintaining social functioning; and mild difficulties in maintaining pace, persistence, and concentration.

While the primary issue raised in plaintiff's brief is that the ALJ's RFC findings are without the support of substantial evidence and result from legal error, plaintiff alludes to a

---

[12]The only explanation given by the DDS consultant as to why Dr. Plummer's assessment was not adopted is that the objective medical evidence supported claimant's ability to carry on medium work. (Tr. 305). No further explanation is given. Although the second RFC assessment completed by a DDS consultant states facts from plaintiff's medical records, (Tr. 392), it provides no explanation as to why those facts show plaintiff is able to handle medium work.

greater, and ultimately dispositive, issue in this case, *i.e.*, the ALJ's determination that plaintiff suffered from no significant nonexertional limitations is  without the support of substantial evidence and, thus, the ALJ's direct application of the grids to produce a finding of "not disabled" constitutes reversible legal error.  (*See* Plaintiff's Brief 21-24).

The grids found in Part 404, Subpart P, Appendix 2 of the regulations may be applied directly only when a claimant suffers solely from exertional limitations.  If a claimant suffers from only nonexertional limitations, or a combination of exertional and nonexertional limitations, then the grids may not be used to direct a finding of "not disabled" unless the ALJ finds that the nonexertional limitations do not significantly impact the claimant's ability to carry out a full range of work.  *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).  At most, the grids may be used as a framework where significant nonexertional limitations exist.  20 CFR § 416.969a(d).  Preferably, the ALJ should elicit testimony from a vocational expert, who can testify as to the availability of jobs in the national economy given plaintiff's limitations. *Newton*, 209 F.3d at 458; *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985).

In this case, the ALJ found that plaintiff suffered from depression and fibromyalgia,[13] disabilities that were severe within the meaning of the regulations.  (Tr. 19).  A severe disability is one that *significantly* limits a claimant's ability to work.  20 CFR § 416.920(c).   Given this definition, any disability that was severe and nonexertional in nature, or included nonexertional symptoms, would significantly affect a claimant's ability to work, meaning the grids could not be directly applied.  *Allsbury*, 460 F. Supp. 2d at 726.  Furthermore, a mental impairment is non-severe only when a claimant suffers from either no or only mild restrictions in the first three

---

[13]*See Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 725 (E.D. Tx. 2006) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 124 (11th Cir. 2004) (identifying fibromyalgia as a nonexertional limitation).

10

functional areas used to assess mental impairments. 20 CFR § 416.920a(d)(1). The ALJ found both mild and moderate limitations in these functional areas, and ultimately found that plaintiff's depression was in fact severe. The ALJ also found plaintiff's fibromyalgia was severe.[14] Both involved nonexertional limitations. Despite these findings, however, the ALJ still applied the grids directly, finding plaintiff "not disabled." (Tr. 25, Finding No. 11). Such a finding lacks substantial evidence.

While the Fifth Circuit does not require the ALJ to explain every detail of his opinion, where an internal inconsistency exists, the ALJ needs to provide sufficient explanation so a reviewing court is not left to speculate as to his reasons for ruling the way he did. Merely using the right words in the opinion is not enough; the ALJ's assessment of the impact of nonexertional limitations upon a claimant's RFC must be supported by substantial evidence. If there existed a difference between the severe assessment at Step 2 and the assessment at Step 5, the ALJ should have explained why the impairment was severe at the earlier step, but not severe at the latter. Here, all sources assessed plaintiff as having some moderate limitations due to her depression, and no source controverts plaintiff's suffering limitations due to her fibromyalgia. Hence, the ALJ's finding of no significant nonexertional limitations is without the support of substantial evidence, and it was error for him to apply the grids directly. On remand, the ALJ should elicit the testimony of a vocational expert to ensure the availability of jobs is properly assessed.

VII.
RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and

---

[14]The ALJ failed to recognize, much less evaluate, the nonexertional limitations caused by plaintiff's fibromyalgia.

recommendation of the undersigned to the United States District Judge that the decision of the

defendant Commissioner finding plaintiff not disabled and not entitled to SSI benefits be

REVERSED and the case be REMANDED for further administrative proceedings.


VIII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 6th day of March 2008.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* <u>NOTICE OF RIGHT TO OBJECT</u> \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D).  When service is made by mail or electronic means, three (3) days are added after the prescribed period.  Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).